1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   BEN BAKER and CLARISSA GLENN,     )
                                       )
 4                Plaintiffs,          )
                                       )
 5     v.                              )   No. 16 C 8940
                                       )
 6   CITY OF CHICAGO, et al.,          )   Chicago, Illinois
                                       )   December 6, 2018
 7                Defendants.          )   11:00 a.m.

 8                       TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SHEILA M. FINNEGAN, MAGISTRATE JUDGE
 9
     APPEARANCES:
10
     For the Baker Plaintiffs:  LOEVY & LOEVY
11                              BY:  MR. SCOTT R. RAUSCHER
                                     MR. SEAN STARR
12                              311 North Aberdeen Street
                                Third Floor
13                              Chicago, Illinois  60607
                                (312) 243-5900
14
     For Plaintiff White,       KENNETH N. FLAXMAN, P.C.
15   et al.:                    BY:  MR. JOEL A. FLAXMAN
                                200 South Michigan Avenue
16                              Suite 201
                                Chicago, Illinois  60604
17                              (312) 427-3200

18   For Defendant City of      REITER BURNS LLP
     Chicago, et al.:           BY:  MR. PAUL A. MICHALIK
19                                   MR. DANIEL M. NOLAND
                                311 South Wacker Drive
20                              Suite 5200
                                Chicago, Illinois  60606
21                              (312) 982-0090

22   For Defendant Watts:       JOHNSON & BELL, LTD.
                                BY:  MR. BRIAN PATRICK GAINER
23                                   MR. AHMED A. KOSOKO
                                33 West Monroe Street
24                              Suite 2700
                                Chicago, Illinois  60603
25                              (312) 372-0770
```

Nancy C. LaBella, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1222
Chicago, Illinois  60604
(312) 435-6890
NLaBella.ilnd@gmail.com

```
 1   APPEARANCES:   (Continued)

 2   For Defendant Mohammed:      RAVITZ & PALLES, P.C.
                                  BY:  MR. GARY JAY RAVITZ
 3                                     MR. ERIC S. PALLES
                                  203 North LaSalle Street
 4                                Suite 2100
                                  Chicago, Illinois  60601
 5                                (312) 558-1689

 6   For Defendant Jones,         HALE LAW LLC
     et al.:                      BY:  MR. WILLIAM E. BAZAREK
 7                                     MR. ANTHONY E. ZECCHIN
                                       MR. BRIAN J. STEFANICH
 8                                53 West Jackson Boulevard
                                  Suite 330
 9                                Chicago, Illinois  60604
                                  (312) 341-9646
10
     For Defendants Spaargaren    LEINENWEBER BARONI & DAFFADA LLC
11   and Cadman:                  BY:  MR. KEVIN E. ZIBOLSKI
                                  120 North LaSalle Street
12                                Suite 2000
                                  Chicago, Illinois  60602
13                                (312) 663-3003

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1        (Proceedings had in open court:)
2            THE CLERK:  Case 16 CV 8940, Baker v. City of
3    Chicago, et al., here for status.
4            THE COURT:  Counsel, we have -- it's a small
5    courtroom, and there are so many of you.  We do have a court
6    reporter here.  And there's microphones, so you don't
7    necessarily all have to step up.  Why don't we have -- you're
8    welcome to use any microphone anywhere, but I don't think I
9    need everybody to step up here.  You wouldn't actually fit.
10   So feel free to just be seated.  You can even go in the jury
11   box if you want.
12           Go ahead.
13           THE CLERK:  Okay.  Can I have counsel for plaintiff
14   Baker please state your name.
15           MR. RAUSCHER:  Scott Rauscher and Sean Starr for
16   plaintiffs in the Baker case.
17           THE CLERK:  Okay.  And do we have counsel for the
18   other plaintiffs?
19           MR. FLAXMAN:  Joel Flaxman for the plaintiffs not
20   represented by the Loevy firm.
21           THE COURT:  All right.  That's a good way of putting
22   it.  We're not going to call all 23-and-growing cases.  But we
23   recognize in many of the cases, the Loevy firm and the Flaxman
24   firm are together representing the plaintiff; in some, only
25   the Flaxman firm.
```

1          MR. FLAXMAN:  Yeah, there's one firm -- excuse me.

2     There's one case where both firms represent the plaintiff.

3          THE COURT:  One, right.

4          MR. FLAXMAN:  The remainder are -- there's just one

5     firm as -- for the plaintiff.

6          THE COURT:  Okay.  Go ahead.

7          THE CLERK:  Thank you.

8          Counsel for defendant City of Chicago and individual

9     Chicago Police Officers represented by Reiter Burns, please

10    state your names.

11         MR. NOLAND:  Dan Noland and Paul Michalik.

12         THE CLERK:  Thank you.

13         Counsel for defendant Watts.

14         MR. GAINER:  Brian Gainer and Ahmed Kosoko.

15         THE CLERK:  Thank you.

16         Counsel for defendant Mohammed.

17         MR. PALLES:  Eric Palles and Gary Ravitz.

18         THE CLERK:  Counsel for current and former defendant

19    officers represented by the Hale Law firm.

20         MR. BAZAREK:  William Bazarek, and I'm also here with

21    Brian Stefanich and Anthony Zecchin.

22         THE CLERK:  Okay.  Counsel for the Spaargaren and

23    Cadman defendant cases.

24         MR. ZIBOLSKI:  Kevin Zibolski.

25         THE CLERK:  Anybody else?

1          Thank you.

2          THE COURT:  Good.  We didn't miss anybody.

3          All right.  Why don't you have a seat.  And then if

4    we get to a point where I -- you're going to have to -- I have

5    questions or you want to argue an issue, whoever is going to

6    argue can just step up to the podium.

7          I did review the joint status report filed on

8    November 30th, docket 189.  Thank you.  It was very helpful.

9    Much of what you've put in that joint status report is by

10   agreement.  So let's go through some of that.  And then there

11   are some disputes that we have to address.

12         So the parties have proposed 18 months for fact

13   discovery in the currently pending cases, which makes the

14   deadline June 9, 2020.  So I'm going to adopt that fact

15   discovery deadline.

16         The parties have agreed that written discovery and

17   depositions may begin immediately in all cases where that

18   discovery hasn't begun and may continue in cases where that

19   discovery has already started.  And that's, of course, fine.

20         The parties have agreed that the presumptive limits

21   for discovery in Federal Rule of Civil Procedure 30 will not

22   apply in these coordinated proceedings.  So they won't.

23         The parties have proposed -- and I will defer setting

24   any expert discovery schedule.  The parties propose that I do

25   that near the end of fact discovery.  What I'm likely to do is

1    a few months before the fact discovery deadline, if the

2    parties haven't asked me to address it sooner, I'll be asking

3    you to identify types and number of experts you anticipate and

4    to propose a schedule so we know what's going to happen when

5    fact discovery ends.

6          As far as -- the parties have proposed that also near

7    the end of the fact discovery deadline, which is now June 9,

8    2020, that I set deadlines for fact discovery for future

9    cases.  I don't think that's really going to work.  I mean, I

10   just set the June 9, 2020 date.  Maybe a case will be filed

11   next month, and I'm not going to wait until 2020 to set that

12   deadline.  So I'm just going to defer on that issue.  We'll

13   see what makes sense as cases come in.  And the parties can be

14   free to -- you know, you'll see what additional discovery is

15   needed and we can talk about deadlines.

16         In terms of the written discovery plan, the parties

17   have agreed, and I'm going to order, that responses to

18   interrogatories served in one case may be used in other cases

19   that are also part of the coordinated proceedings.  And also,

20   to avoid unnecessary duplication of work, the coordinated

21   cases are not part of the mandatory initial discovery program.

22         I do see the parties have a disagreement about what

23   initial disclosures should be made when new cases are filed.

24         The defendants are suggesting that the usual

25   Rule 26(a)(1) disclosures be done, and the plaintiff would

1    disclose 30 days after a complaint is filed and defendants

2    would file theirs 30 days after the plaintiffs.

3         The plaintiffs propose that they make their

4    disclosures the same day as defendants, the parties would make

5    their disclosures on the same day, 45 days after a complaint

6    is filed; but also their disclosures would not be what's

7    required under Rule 26(a)(1) but would be similar to what's

8    required under the mandatory initial discovery program.  And

9    so what that means is that instead of disclosing persons

10   likely to have discoverable information that the disclosing

11   party may use to support its claims or defenses and providing

12   the subjects of that information, as Rule 26 requires, under

13   the plaintiffs' proposal, the parties would identify persons

14   likely to have discoverable information relevant to any

15   party's claims or defenses and then provide a fair description

16   of the nature of the information each such person is believed

17   to possess.

18        And also the plaintiffs' proposal would require the

19   parties to give names and addresses of all persons you believe

20   have given written or recorded statements relevant to any

21   party's claims and defenses and provide a copy of the

22   statement that would be attached, absent a claim of privilege.

23   Again, if the statement were not in the party's possession,

24   custody, control, the party would still state the name,

25   address, and phone of each person believed to have a copy,

1    assuming that information is known to the party.

2         And, finally, in the plaintiffs' proposed initial

3    disclosures, it would also include -- 45 days after filing the

4    complaint -- would include the production of documents and ESI

5    that a party believes may be relevant to any party's claims or

6    defenses if the party knows the materials exist but regardless

7    of whether the party has possession, custody, or control of

8    those materials.

9         So I've thought about this.  You know, if the parties

10   were in agreement, then I'd have no problem experimenting if

11   it makes sense to me.  But you're not in agreement on this

12   proposal.  And, you know, the MIDP is a pilot program.  We

13   have no idea -- I certainly have no idea whether the court is

14   ultimately going to decide that it's more efficient or less

15   efficient to use those procedures.  Maybe it will be a mixed

16   bag and they'll adopt some of them and others will be

17   rejected.  But it is an experiment.

18        And so in this case, where we've got, what, 23 cases

19   and growing?  It's going to be 50 cases.  I don't think it's

20   going to make my life easier or yours for me to experiment in

21   this case by adopting the -- some aspects of the MIDP.  And so

22   I'm not going to -- I think I'm going to keep it with the

23   Rule 26(a)(1) disclosures.  If you get to a point, as you've

24   been doing this with new cases being filed, where you want to

25   simplify that and you have a proposal, and especially if

1  you're in agreement, by all means bring it to my attention and

2  we can consider that.  But I'm not going to experiment and

3  require the MIDP disclosures to be done in this case.

4           All right.  So let's turn to the depositions.  The

5  parties agree that to the extent practicable, the depositions

6  will be --

7           MR. FLAXMAN:  Your Honor --

8           THE COURT:  Yes.

9           MR. FLAXMAN:  There was a disagreement about --

10          THE COURT REPORTER:  I'm sorry --

11          MR. FLAXMAN:  I'm sorry.  Joel Flaxman.

12          THE COURT REPORTER:  Could you use the microphone,

13  please.

14          MR. FLAXMAN:  Oh.  Is it okay if I move this?

15          THE COURT:  Yes.

16          MR. FLAXMAN:  The other disagreement was about --

17  just about the dates for those disclosures.

18          THE COURT:  Oh, good point.  So the -- is your

19  proposal simultaneous, Mr. Flaxman; that they be done on the

20  same day but 45 days after a complaint is filed?

21          MR. FLAXMAN:  That was our proposal, yes.

22          THE COURT:  All right.  And defendants' proposal is

23  30 versus 30.  Why, again, would I want to deviate from the

24  normal practice unless I have an agreement to do it.  Does

25  anybody on the defense want to respond to that?  Otherwise I'm

1    going to adopt the normal 26(a)(1) process, except that it

2    will be triggered by the filing of the complaint.

3             MR. NOLAND:  That's fine, Judge --

4             THE COURT:  Okay.

5             MR. NOLAND:  -- on behalf of our clients.

6             THE COURT:  All right.  So turning to the

7    depositions --

8             MR. NOLAND:  The one thing I would add to that is

9    that there would be new defendants that are added, and so

10    those particular defendants probably shouldn't be tied to the

11    complaint filing date because there will be issues with

12    respect to tracking that particular individual down.

13             THE COURT:  So why don't I say this:  If it's a brand

14    new defendant who has never been named in a complaint, the

15    parties will confer and see if you can come to an agreement on

16    scheduling, unless you want to pretend it's like a brand new

17    case and, you know, agree on some deadline.  And I'll hear

18    from you if you have a dispute.

19             On depositions, they shall be cross-noticed for

20    multiple cases.  And there's a presumption that each

21    plaintiff, defendant, and third party will be deposed only

22    once for all cases that are pending when the deposition is

23    taken.  So that will be required.  And, of course, the parties

24    are going to work cooperatively to set reasonable time limits

25    in advance of the depositions.  And they recognize that seven

1 hours may not be a sufficient amount of time to depose certain

2 parties and potentially certain third parties.

3          I'm not going to do it now, but as you move ahead, if

4 you think it makes sense, you might want to propose some kind

5 of deadlines for making proposals about that issue of

6 reasonable time limits so we avoid last-minute disputes that

7 interfere with your planning and you don't have to run into

8 court at the last minute trying to get me to resolve your

9 disputes.  So, hopefully, it won't be an issue; but if so,

10 feel free to propose deadlines for making known what your

11 views are on time limits or time parameters.

12          For the depositions of defendant officers, the

13 defendants are proposing some procedures that plaintiffs

14 oppose, at least some of them.  On the first one -- and I

15 don't know if plaintiffs oppose it, so let me just go through

16 that one.  Defendant officers -- or I should say defendants

17 are proposing that seven business days before a defendant

18 officer's deposition, if it's scheduled for more than one day,

19 in that event, the plaintiff will disclose to defense counsel

20 the lawsuits for which the defendant officer will be examined

21 on for each particular deposition date.

22          Are plaintiffs opposed to that?

23          MR. RAUSCHER:  We're opposed to adopting that as a

24 formal requirement, in large part because we don't think it's

25 a practical way to go about taking the depositions.  And I

1  think it is likely to lead to more disputes about whether a

2  particular question relates to a case that we've notified -- a

3  specific case we've notified them about before the deposition

4  or relates to 404(b) evidence or relates to Monell evidence.

5          What we've -- what I've -- we've talked about at

6  least informally before the status conference today is we can

7  say, here are the cases we expect to concentrate on on this

8  particular day.  And I think that's a reasonable way to do it

9  without tying either party to the specific types of questions

10  you can ask at a deposition which you wouldn't normally have

11  to do in advance of a deposition.

12          THE COURT:  So a witness might give an answer in one

13  of the cases you're concentrating on, and you know that there

14  is another case and it was not set for that day but it has

15  some issue that ties into what he's now testifying about, and

16  you want to be free to jump in and ask a question for that

17  reason, even though it's not the primary day that you're going

18  to be questioning about this other case, for example?

19          MR. RAUSCHER:  I think that's a very good example of

20  a potential dispute that could be raised if we adopt this as a

21  formal procedure.

22          THE COURT:  You know, that would seem to make sense

23  to me.  It's not a memory test, so I am concerned that if

24  somebody you're -- if somebody is going to be deposed, that

25  they have some ability to prepare and read the arrest reports

```
 1    and other materials.  And maybe if you get to a point where
 2    you're deviating too much and you're getting into another
 3    case, that the parties can take a recess, let the officer
 4    actually sit down and read the arrest reports.  But it is, it
 5    seems to me, hard that the defendants would be able to step up
 6    and object and not answer a question just because it's called
 7    on the wrong day.
 8            Is there anything that the defendants want to say on
 9    that point?
10            MR. BAZAREK:  Yes, your Honor.  Just --
11            THE COURT:  What plaintiffs are proposing seems to
12    make sense --
13            MR. BAZAREK:  Your Honor --
14            THE COURT:  -- in theory.
15            MR. BAZAREK:  -- just for background.
16            THE COURT REPORTER:  Counsel, your name, please.
17            MR. BAZAREK:  Sure.  William Bazarek from Hale Law.
18            So, Judge, just hypothetical officer.  Let's say
19    plaintiffs let us know they're going to take depositions
20    concerning all the lawsuits where the department member is
21    being sued over three days.  And so all we are asking for is
22    that you let us know on day one, he's going -- this -- he or
23    she is going to be questioned about this particular case.  So
24    it's not preventing the plaintiff from asking questions about,
25    you know, another day or another incident that would be for,
```

1    say, day two or day three.

2          But it's more than just potential plaintiffs because

3    we already know we're expecting another 25 cases shortly.

4    There's also individuals whose cases may be investigated right

5    now, and The Exoneration Project knows who those individuals

6    are, and plaintiffs likely know who -- or plaintiffs' counsel

7    likely know who those individuals are, that we wouldn't want

8    to be in another position of having to -- an officer be

9    examined and questioned about a case where there's been no

10   discovery, doesn't know, you know, about the case, hasn't

11   prepared for that case or to testify, to start going into

12   questions like that.  And so I think that's what the problem

13   is.

14          And I'm not saying this is, you know, like an

15   ambush-type thing.  But this is really such a unique case

16   where you have an officer sitting for, right now, say,

17   hypothetical, 15 separate incidents, lawsuits that he's going

18   to be examined on.  So I think it's -- it's a fair way to go

19   about -- and I would say also an efficient way -- to go about

20   depositions.

21          THE COURT:  I mean, in theory what plaintiffs'

22   counsel is saying makes sense; and you're saying, I am going

23   to do it that way.  But I can't envision -- and maybe some

24   situation is going to come up where it's really going to be

25   inefficient or I need to tie into some other case.  It may or

1  may not happen.  I mean, if you think about it, you have so

2  many other other-acts cases already just with the number of

3  ones that are -- have been brought.

4          I think what we do here is if you get to a point

5  where you actually -- plaintiffs' counsel asks -- you think

6  there's a question you have to ask, you're not trying to turn

7  to a case that hasn't been identified for the day, but you

8  have some limited question and it ties directly to what's

9  happening, that you go ahead and ask it.  And if, you know,

10 it's -- defendants, you know, you can decide you're going to

11 let him answer or not.  If you think it's going too far and

12 it's now questioning about another case, not one on the list,

13 you know, you can stop it and -- but I don't want to set a

14 rule that under no circumstances can plaintiffs' counsel ever

15 ask any question that, you know, you might argue relates to

16 some other case because I just -- I can't anticipate every

17 situation that might come up.

18         So I think if that situation comes up, make your, you

19 know, case, ask the question, and hopefully you can work it

20 out.  If not, you know, you might end up having to ask that

21 question on another day, depending on how I rule.  But given

22 the number of cases, I -- you know, I don't see how you can

23 not give some advance notice of which cases you're going to

24 cover on which days.

25         On the question of cases that -- I mean, it's

1    possible some cases are never going to become the subject of a

2    lawsuit.  And so how do plaintiffs ask questions about those?

3    I mean, if I assume every single case will be a lawsuit, then

4    we know at some point the defendants will be -- officers will

5    be questioned about that case.  If there's no lawsuit, then

6    how do plaintiffs get to depose about a case like that, under

7    the defendants' proposals?

8              MR. RAUSCHER:  Is that a question for the defendants?

9              THE COURT:  Yes, I guess it is for the defendants.

10             MR. BAZAREK:  Your Honor, I would imagine from just

11   press accounts that I've read and even the statements in

12   court, that there could be -- let's just say, hypothetical, we

13   know there's going to be another 25 lawsuits filed within the

14   next month and a half.  And Exoneration Project -- plaintiffs

15   know that there's X number of individuals -- they know them by

16   name -- who the state's attorney right now is investigating

17   those cases.  So that -- those are known.

18             Our point is those that are known, that are under

19   investigation by the State's Attorney's Office, that the

20   plaintiffs should not be allowed, in lawsuits that are

21   presently filed, to ask questions about those particular cases

22   because really what you have then, it's discovery being

23   conducted on a lawsuit that hasn't been filed.  Our clients --

24   my clients have not been able to prepare, defend, don't know

25   what the allegations are.  So it's -- that's the point I'm

1    making there, Judge.

2          MR. FLAXMAN:  Your Honor, if I could give a more

3    concrete example.  And I certainly, to a certain extent, agree

4    that it would be improper for the plaintiffs in one case to be

5    attempting to get discovery about a case that hasn't been

6    filed, to a certain extent.

7          The issue -- and I can give you a -- I mean, there's

8    one issue that we haven't talked about; that there are certain

9    arrests where there's never going to be a case; that there are

10   a handful of people who were arrested and went to trial and

11   were found not guilty.  We think the allegations that those

12   people were framed and then found not guilty at a trial are

13   going to be relevant in this case and --

14         THE COURT:  Because you won't have enough other-acts

15   evidence without that?

16         MR. FLAXMAN:  Well, I think some of those may be the

17   strongest ones because they went to trial and because a jury

18   or a judge agreed, yes, you should not be found guilty.  And

19   so the language here says we're not allowed to ask any

20   questions about those.  I don't think that's fair.

21         In terms of the issue of cases that are in the

22   state's attorney's hopper, so to speak, I can give you a

23   concrete example.  Angelo Shenault, Jr., on one of his

24   arrests, the same day two other people were arrested.  I know

25   that the state's attorney is reviewing one of those arrests.

1    And if I'm taking a deposition about Mr. Shenault being

2    arrested, I'm going to ask -- I need to ask about the other

3    person who was arrested that day.  I don't want to spring that

4    on the defendants.  I want them to be prepared and to be able

5    to answer those questions.  But to say I'm not allowed to ask

6    about this other person arrested, it just ties our hands in an

7    unfair way.

8         And I think, like the MIDP stuff we were talking

9    about, you know, it sets an experimental rule that there's no

10   basis for, when we don't know how it's going to work.

11        THE COURT:  So you've raised two specific situations.

12   So one is, if there's -- we know there will never be a lawsuit

13   because the person was not convicted, it seems to me, you

14   know, you should be allowed to ask questions.  You just have

15   to identify which day you're going to cover those so that the

16   defendant officers can be prepared; and then, you know, you

17   ask those questions on that day.

18        Defendant -- do defendants want to say anything more

19   on that?

20        MR. BAZAREK:  No.

21        THE COURT:  Okay.  And then --

22        MR. PALLES:  Excuse me.  I do, your Honor.  Eric

23   Palles for Kallatt Mohammed.

24        It seems to me that it will be perfectly fair to

25   impose a limitation on 404(b) witnesses, limited to plaintiffs

1    or putative plaintiffs.  I don't see why, for example, if

2    somebody is not going to file a lawsuit or if somebody filed a

3    citizen complaint 15 years ago -- I mean, every one of these

4    cases is alleged to be similar to the others.  So a universe

5    of 50 to 75 other acts would seem to me to be a reasonable

6    limitation, given the other 404 -- excuse me -- the other 403

7    considerations.

8              THE COURT:  I mean, I think you can talk about that.

9    I can't imagine plaintiffs, with the number of cases you're

10   going to have of actual filed lawsuits -- and we're talking,

11   you know, the parties have estimated 200 to 300 depositions --

12   that you're going to want to go off and start doing

13   depositions in cases where people were not convicted just

14   because you can.  I think you're going to pick your best cases

15   and hopefully limit it to that.

16             So I will direct the parties to discuss limits.  And

17   when you get to a point where you need an answer from me on

18   it, I will rule on that.  But I'll look at more argument and

19   see what the context is.

20             MR. PALLES:  One other question, your Honor, just for

21   clarifying.  It seems to me that the gist of where we're going

22   with these depositions is that you're indicating that,

23   generally speaking, the plaintiffs ought to provide notice of

24   the cases they're going to be deposing our defendants on.

25             THE COURT:  They will provide notice, yes.

1        MR. PALLES:  Okay.  All right.  And is there -- you

2  know, we'll deal with the exceptions --

3        THE COURT:  Right.

4        MR. PALLES:  -- as they arise.

5        THE COURT:  So the second situation Mr. Flaxman

6  raised was what if we have multiple -- now, I can't call them

7  plaintiffs because one will have sued but others have not, but

8  there were multiple people arrested in the same occurrence by

9  the defendant officers on a particular day; one has now filed

10  a lawsuit, the others have not filed yet because maybe their

11  convictions are still under review.

12        And if plaintiffs want to move ahead now with the

13  plaintiff who has filed a lawsuit and want to ask questions

14  about the others who have not sued yet but is providing notice

15  and they relate, that seems to me to be efficient.  Defendants

16  would have notice of it.  It's one universe of arrest reports.

17        If you get to that point, you're scheduling that, and

18  you think -- defendant officers think that's not the situation

19  and it would be unfair or it can't be done that way, you know,

20  I'll hear from you.  But barring that, again, my point is

21  to -- you know, defendant officers should have some notice.

22  It should be done efficiently, and it might be more efficient

23  there to let the defendant officer answer questions even on

24  some arrests that have not yet resulted in lawsuits if they're

25  tied to an arrest that has already resulted in a lawsuit.

1          MR. BAZAREK:  Judge, one thing on that then.  If that

2  was the case -- and I appreciate the example of that -- where

3  if, in fact, there's other co-arrestees, maybe their matter is

4  being investigated right now and the officers then, you know,

5  make themselves available to answer questions for that

6  particular day, wouldn't that suffice then for -- that will be

7  the deposition for, you know, that particular case as well if

8  a lawsuit is subsequently filed?  I mean --

9          THE COURT:  I think that's fair.  I mean, there may

10  be some reason plaintiffs' counsel would say, I could not have

11  known or anticipated, I -- there's some new information I

12  didn't have; but if you want to move ahead now and depose and

13  everybody is ready and you're asking the questions, you know,

14  in theory, it makes sense to -- you don't get another shot on

15  that case.

16          MR. FLAXMAN:  In theory it does make sense.  And

17  it's -- as a matter of expense, I think it's what everyone

18  would want to do.

19          THE COURT:  Right.

20          MR. FLAXMAN:  I think in a lot of things that we are

21  discussing today, we should have some recognition that, you

22  know, this person may come into the case with a different

23  lawyer.  And that's -- you know, there's an issue with binding

24  plaintiffs and defendants who are not involved who are not

25  here today, and there's a -- the same kind of issue if that

1   person has different representation.

2           THE COURT:  Well, that lawyer would make a case to

3   me.

4           MR. FLAXMAN:  Right.

5           THE COURT:  And obviously there's a deposition

6   transcript, and I would hear --

7           MR. FLAXMAN:  Sure.

8           THE COURT:  So, again, barring some circumstances

9   that will be brought to my attention that I couldn't consider

10  today or didn't consider, we'll proceed as I've indicated.

11          MR. MICHALIK:  Judge, Paul Michalik.

12          I think paragraph 13 of the joint status report

13  probably covers that latter issue.

14          THE COURT:  So paragraph 13 indicates:  Future

15  plaintiffs who file cases after any particular defendant is

16  deposed will be permitted to re-depose that defendant on

17  topics that are not duplicative of the earlier depositions.

18  The parties will work cooperatively to ensure that these

19  depositions occur in efficient intervals so they can cover

20  multiple plaintiffs' cases in one deposition setting.

21          Yes, although it's a little bit different because in

22  paragraph 13, potentially no case -- no questions have been

23  asked about that particular arrest.  And in the case of

24  Mr. Flaxman's example, they spend a lot of time talking about

25  the exact arrest.  So it might be a little harder to show, you

1    know, not just that we didn't cover on that topic, but counsel

2    would have to show, you know, something -- some reason that

3    they have to actually get back into that arrest.

4           The -- did counsel confer and designate this agreed

5    70 deposition dates through July 2019?

6           MR. RAUSCHER:  We did confer.  And essentially other

7    than from June 21st to July 5th, a couple other dates in the

8    middle there, we have set all of the dates from -- starting

9    mid-February are free.  And we're going to block out Tuesdays

10   and Thursdays from mid-February through July, other than those

11   couple of weeks.  And then we'll work on slotting in -- trying

12   to do sort of equal days plaintiffs and defendants.

13          THE COURT:  All right.

14          MR. RAUSCHER:  And that's not saying Tuesdays and

15   Thursdays -- we're not limiting it to only Tuesdays and

16   Thursdays, but that's where we're starting at least.

17          THE COURT:  Okay.  So those dates everybody will

18   be -- have open, but you might have other dates that you might

19   also schedule depositions.

20          Is there anything more anybody wants to say on that

21   issue?

22          Okay.  As agreed, the parties can use all depositions

23   taken in the coordinated proceedings, including parties in

24   cases that are filed after a given deposition date.

25          Also as agreed -- maybe we actually talked about the

1    next one.  Future plaintiffs can't duplicate questions asked

2    at prior depositions.

3          So I think that we now turn to documents.  And this

4    is paragraph 17 in your joint status report.

5          So the parties have described what's been produced to

6    date and have agreed:  Any documents produced in pending cases

7    may be used by any party in the coordinated cases, subject to

8    and without waiving any objections to the admissibility of any

9    such documents.  So that will be adopted.

10          As far as ESI, the parties expect that the

11    coordinated cases may involve the production of ESI.  And they

12    will meet and confer to address the parameters of such

13    documents, including the potential use of search terms.

14          So has that not happened in any of the five cases

15    yet?

16          MR. NOLAND:  There was some discussion in the Baker

17    case and there have been some e-mails, not a lot, produced.

18    And so there was some discussions.  And I think this kind of

19    addresses that.  And there will need to be probably an

20    additional discussion with all the parties.

21          THE COURT:  Okay.

22          And then the parties have agreed going forward

23    documents will be marked and produced to indicate that they're

24    being produced as part of the coordinated discovery

25    proceeding.  And those will be made available to all parties.

1          And also before producing any additional documents,

2     plaintiffs will decide on a new prefix for a Bates stamp.  And

3     that will indicate the documents are being produced as part of

4     the coordinated proceedings.  And all documents that

5     plaintiffs produce going forward will have that prefix.

6          Also, documents produced by the defendants shall

7     indicate which defendant is producing the documents.  And the

8     parties will use consecutive Bates numbering for production

9     across the coordinated cases, rather than starting with a new

10    Bates range in each separate case.  That's fine.

11         On the protective orders, same protective order in

12    Baker will apply in every other case.

13         As far as HIPAA orders, plaintiffs don't believe a

14    HIPAA order will be appropriate in every case.  Defendants

15    think it will be.  I'm going to wait.  When you get to a point

16    where you have a disagreement, you know, I'll just rule on

17    that.  I don't think there should be any disagreement on the

18    language.  If there is, I'll rule on that the first time it

19    comes up.

20         MR. NOLAND:  Your Honor, may I ask a question?

21         THE COURT:  Yes.

22         MR. NOLAND:  Again, Dan Noland.

23         Paragraph 21, as far as the protective orders, do we

24    need to take any further action on that?  Do we need to put a

25    caption on the orders and submit them to your proposed order

1    e-mail system?  Or is there some other way that your Honor
2    would like to handle it?

3          THE COURT:  You know, I think it would be best to
4    take the current one, list every case, every party, and then
5    get everybody to have signed off on it because we have lawyers
6    who -- parties who aren't even in the Baker case.  So that
7    would be my suggestion, unless somebody has a better idea.

8          MR. RAUSCHER:  Judge, that sounds fine.

9          THE COURT:  I mean, obviously then we have future
10   cases.  If somebody new comes in, a new firm, a new party,
11   then they would need -- we would need to do something
12   additional.  But, otherwise, maybe the agreement could be
13   worded so we don't have to do that just for every new case if
14   there are no new lawyers or parties other than the plaintiff.

15         MR. RAUSCHER:  That proposal sounds -- this is Scott
16   Rauscher again.

17         That proposal sounds fine to us.  One thing we had
18   discussed before the status conference was the possibility of
19   having maybe a new lead case caption, sort of like in an MDL
20   proceeding, at least for the discovery and joint things like
21   this for pretrial.  That's, I guess, largely a Court issue,
22   not our issue.  But if there's anything we can do to help with
23   that, if the Court thinks it makes sense, we thought that
24   might be an efficient way to handle things.

25         THE COURT:  Anybody have any other suggestions along

1    those lines?  Have you seen that done in anything besides an

2    MDL?  I mean --

3           MR. RAUSCHER:  The closest in -- if -- you know, like

4    putative class actions that get consolidated --

5           THE COURT:  Right.

6           MR. RAUSCHER:  -- for pretrial proceedings and they

7    sort of -- they say like "related to" on it, on the caption.

8           THE COURT:  I guess then if they did that, it would

9    be basically a new docket, right?  So everything would then be

10   filed in that, rather than, right now, we have a number of

11   things filed in the Baker case.  I'll talk to Judge Wood and

12   we'll talk to the Clerk of Court and see if that could be done

13   and let you know.

14          So I guess the only question I would have -- so if we

15   have a new plaintiff, say, who has not signed on to the

16   protective order, counsel has signed on, and I guess if we

17   have the same counsel for that plaintiff as prior plaintiffs,

18   then the only question would be whether your client is, you

19   know, advised and knows and is bound by that order.  And so we

20   just need language somehow so that it's crystal clear that

21   these new plaintiffs are bound by the protective order.

22          So I think I'll let the parties try and propose a

23   language and the form of that.  And if you have disputes, you

24   can let me know what it is.  But hopefully you'll have an

25   agreement of what you think accomplishes what you need for

1   your clients' protection, whether it's, on plaintiffs' side,

2   maybe medical records, or defense side, you know, whatever

3   information you have that is going to be under the protective

4   order.

5            MR. RAUSCHER:  Judge, should we submit that to your

6   proposed order --

7            THE COURT:  You know, I think I'll just have you file

8   it.  It's got to be in the court record anyway.  So whether

9   it's an agreed order or red lined or two different versions,

10  however you want to do that, but let's say you'll file it.

11           Do you want me to set a deadline for doing that?

12  And, if so, do you want to propose one?

13           MR. RAUSCHER:  I would say two weeks just to make

14  sure we have time to confer with all the parties.

15           THE COURT:  All right.

16           THE CLERK:  Two weeks is December 20th.

17           THE COURT:  All right.  But the parties have agreed

18  until such time as a protective order is entered in -- whether

19  we call it the new captioned case or -- but the Baker order

20  applies in every case until a protective order is entered in

21  the other cases.

22           And you've also agreed the parties will maintain the

23  confidentiality of documents subject to provisions of HIPAA

24  until a HIPAA order is entered in the case or cases for which

25  the HIPAA-protected information is relevant.

 1          The parties have agreed, so I will adopt your

 2   proposal, that any future parties in the coordinated

 3   proceeding may be provided with all documents produced, so

 4   long as they agree to abide by the terms of the Baker

 5   protective order or whatever protective order is in place.

 6          The parties have agreed to entry of a Rule 502 order

 7   for inadvertent production of privileged documents.  Can I

 8   just set the same date for you to submit that, December 20th?

 9          All right.  And then you're working on the privacy

10   order, so I don't think there's anything for me to do with

11   regard to that at this juncture.  When you have it, you'll

12   submit it and I'll enter it.

13          MR. NOLAND:  And I think the only thing to say there,

14   on paragraph 24, I don't -- the Privacy Act order is a little

15   bit different and we have to have the government's agreement

16   and involvement.  So I'm not sure that we can share the

17   documents produced by the government pursuant to that Privacy

18   Act order to parties that otherwise haven't received them,

19   unless there's a case that they're in in which they have them.

20          THE COURT:  All right.  Well, the government -- U.S.

21   is not party to this agreement.  So if they have their own

22   limitations on what you can do, that will be spelled out in a

23   Privacy Act document or order once you have it.

24          All right.  In terms of the -- the next section is

25   just describing completed and anticipated written discovery.

1    Have all the third parties been served in the cases,

2 you know, let's say, Baker, the earlier cases?  Are there

3 still some third parties who are going to be subpoenaed and

4 haven't been?  For documents I'm talking about.

5    MR. FLAXMAN:  I don't think they're -- I expect we'll

6 see more to the state's attorney in a lot of the cases that

7 are already filed.

8    MR. NOLAND:  Yeah, I think there's going to be a

9 variety of additional third-party subpoenas that are issued,

10 especially with all the new cases that are filed, that are

11 going to have to go out.  And, you know, we had -- I think

12 there's substantial additional record subpoenas that are going

13 to go out.

14    THE COURT:  So I guess I'll put it differently.  For

15 entities that have already received subpoenas, they're going

16 to get more subpoenas because there are new cases.  But are

17 there any third parties who have never gotten a subpoena for

18 documents that you anticipate will be getting subpoenas?

19    I mean, you've got a list of many entities.  And I

20 guess I'm assuming they all have been subpoenaed for some case

21 or other already.  Nothing comes to --

22    MR. NOLAND:  I think that's right.  There could be

23 plaintiffs -- from our side, plaintiffs could have particular

24 unique issues to them about --

25    THE COURT:  Right.

1        MR. NOLAND: -- some type of employer or something

2  like that in which there could be -- additional subpoenas

3  could go out.

4        THE COURT: Okay.

5        All right. And then, so I would like the parties to

6  take your agreements and things I've ordered and put it into a

7  case management order that I will enter. And, again, I'll set

8  the same date for that, December 20th.

9        The only other thing is, I think it's -- it would

10  make sense in this case, given the number of parties, that at

11  each status, I'm going to set a future status date. I'll have

12  a joint status report be filed in advance. And in that joint

13  status report, if you're in agreement that we don't need to

14  have the status hearing that I've scheduled, you can say that

15  in the joint status report, propose a new date that you all

16  think makes sense; and that way when I get your joint status

17  report, you know, if it's just everything is going fine and

18  you don't need to appear, I'll save you all a trip to court.

19  But if we do need it, everybody has got it on their calendar

20  so we don't have to worry about trying to find a date that

21  works for everyone.

22        I mean, right now you have that date with Judge Wood,

23  so I had adopted the same date. That was, what, January 7th,

24  I think.

25        THE CLERK: January 4th.

1          THE COURT:  January 4th.  I mean, I normally wouldn't

2  set a date that soon.  I guess I'll keep that date as long as

3  she has it.  If she cancels that date and you're all in

4  agreement that it is pointless to come in on January 4th, then

5  I'll be happy to reset that.  I'll just ask that you confer

6  with each other and come to an agreement on a proposed new

7  date.  Assuming that January 4th date goes forward, you know,

8  I would set another one -- I'll roughly do them every two

9  months probably, unless you have a proposal and you think it

10  should be more frequent or less frequent.

11          MR. PALLES:  Your Honor, Eric Palles for Kallatt

12  Mohammed.  May I be excused?  Mr. Ravitz will be here for --

13          THE COURT:  Yes, you may.

14          MR. PALLES:  Thank you, your Honor.

15          THE COURT:  So let me do this:  I'm going to set a

16  new status date in roughly 60 days with a date for a joint

17  status report.  And what I'll do -- I think if Judge Wood ends

18  up keeping her status, maybe I'll just walk over there and

19  I'll be there and, you know, it will be -- if she keeps hers,

20  it will be quick at least.

21          Go ahead, Mr. Noland.

22          MR. NOLAND:  Potentially relevant to that, the

23  defendants' responsive pleadings are due tomorrow in the newly

24  filed 15 cases.  And we've spoken with plaintiffs' counsel and

25  requested an extension.  The defendants are working on a joint

1    motion to dismiss -- I guess motions.

2           And so one question we had for your Honor is whether

3    or not -- if there's any -- if you have any ideas how we would

4    go about getting an extension in each one of those?  If we

5    could submit a -- and we do have a call into Judge Wood's

6    clerk with respect to that.

7           And then, secondly, perhaps that would be relevant to

8    whether or not Judge Wood is going to keep that --

9           THE COURT:  Okay.

10          MR. NOLAND:  -- January 4th date because I think the

11   date we agreed upon was January 7th that we would be filing

12   the defendants' motions to dismiss by then.

13          THE COURT:  So you're still conferring or do you have

14   an agreement now?

15          MR. NOLAND:  We have an agreement of January 7th for

16   the responsive pleading date for all the defendants in the 15

17   newly filed cases.  The defendants in the previously filed

18   cases, I believe, already have responsive pleadings on file.

19          THE COURT:  Okay.  And so given that, is it your

20   view, all of you, that it might make sense to reset that

21   January 4th date to maybe a date in early February?  That will

22   be up to Judge Wood, but if you're in agreement, I can convey

23   that.

24          MR. NOLAND:  Yes, from our side.

25          MR. RAUSCHER:  That's fine for plaintiffs as well.

1          THE COURT:  Okay.  So why don't we look at our

2    calendars for a date in roughly 60 days from now and you can

3    check your calendars.

4          THE CLERK:  60 days is February 4th.

5      (Brief pause.)

6          THE COURT:  How does February 6th look, only because

7    I have another case that's going to take a while at 11:00 and

8    I like to do these later so I can get a court reporter.  How

9    does 10:45 on Wednesday, February 6th look?

10          Anybody want to argue for a different date?

11          Okay.  All right.  So that's going to be a status

12    before me.  I think with Judge Wood, I'll give her a heads up

13    about this, but I can't reset her date for responsive

14    pleadings so just file an agreed motion, but I'll let her know

15    it's on its way.

16          MR. MICHALIK:  Paul Michalik again.

17          And that's one of the issues that we have.  We would

18    like to be able to do this as efficiently as possible.  We're

19    talking about 15 different cases.  So I guess our question is,

20    do we need to file a motion in each of the 15 cases or can we

21    somehow just submit perhaps agreed orders in the 15 and sort

22    of avoid all of the unnecessary paperwork?

23          THE COURT:  I think that makes sense.  You know, we

24    just want to make sure there's a record of what happened.

25    Nobody objects to that proposal, do they?

1          MR. RAUSCHER:  No.

2          THE COURT:  Okay.  So I'm going to say that I gave

3    you permission to do it that way.

4          MR. MICHALIK:  Thank you, Judge.

5          THE COURT:  All right.  Anything further that anybody

6    wanted to raise?

7          MR. NOLAND:  I think the last thing was going back to

8    the 26(a)(1)s and the due date of that.  And I think the

9    discussion was 45 days after filing of the complaint.  Of

10   course, the 15 new cases were filed more than 45 days ago, and

11   the parties have not exchanged -- but there's actually maybe a

12   couple of them have -- but for the most part, Rule 26(a)(1)

13   disclosures.  So I don't know if we need to set a date for

14   those today or if it would be 45 days from today that we would

15   be doing that.  That would be fine with us, if that's

16   acceptable to the Court and plaintiffs.

17         MR. FLAXMAN:  45 from today is fine.

18         MR. RAUSCHER:  Yes.

19         THE COURT:  So Rule 26(a)(1) disclosures in any case

20   where they haven't been served are due in 45 days.  And going

21   forward, 45 days from filing of the complaint.

22         MR. NOLAND:  Thank you.

23         THE COURT:  All right.  Good.  Thanks, everyone.

24   Anything else?

25         Okay.

1      (Which were all the proceedings heard.)

2                          *    *    *    *    *

3

4    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

5

6
     _/s/ Nancy C. LaBella___              _December 13, 2018_
7    Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25