IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: WATTS COORDINATED PRETRIAL PROCEEDINGS | ) ) ) ) ) ) ) | Master Docket Case No. 19-cv-01717<br><br>Judge Franklin U. Valderrama<br><br>Magistrate Judge Sheila M. Finnegan |

THIS DOCUMENT RELATES TO CASE NO. 16-CV-8940

## MOTION TO BAR OR LIMIT CERTAIN TESTIMONY OF DEFENDANTS' EXPERT WITNESS MICHAEL BROWN

Plaintiffs Ben Baker and Clarissa Glenn move, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), to bar portions of the proposed expert testimony of Michael Brown. In support thereof, Plaintiffs state as follows:

### INTRODUCTION

Defendants Ronald Watts and Kallatt Mohammed were arrested in 2012 and eventually pled guilty to federal criminal charges following a lengthy investigation by the federal government that was conducted jointly with the City of Chicago. Beginning in 2004, the FBI and Chicago Police Department started investigating allegations that Watts and Mohammed were extorting drug dealers in the Ida B. Wells housing project. The Chicago Police Department's Internal Affairs Division ("IAD") participated in this investigation from the start. Because IAD was kept abreast of the FBI investigation, City officials—including the head of IAD and the CPD superintendents—were aware of credible allegations that Watts and his team were extorting and soliciting bribes from drug dealers. Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The City also received

1

(and ignored) numerous complaints that Watts, Mohammed, and others were framing innocent people for drug crimes that they did not commit. Despite this, the City allowed Watts and Mohammed to remain in their roles as tactical officers until federal law enforcement arrested them both in 2012. As City officials were aware, the purpose of the FBI investigation was to investigate and prosecute criminal activity, not to impose discipline and control of the CPD. And Plaintiffs assert that nothing about the FBI investigation relieved the City of its fundamental responsibility to supervise, discipline, and control its officers. During the FBI investigation, which spanned at least eight years, City officials had reason to believe that Watts and his crew continued engaging in criminal activity on the streets—extorting drug dealers and framing citizens for crimes they did not commit—yet City officials took no steps to prevent these abuses from continuously occurring.

Among other things, Plaintiffs have alleged a *Monell* claim that includes a theory that the City had a wholesale failure to supervise and discipline Watts and Mohammed, along with other Defendants, and that the City long knew about and ignored holes in its disciplinary system. The City's failure to adequately supervise and discipline Watts, Mohammed, and other Defendants while the FBI's eight-year investigation continued is relevant to Plaintiffs' *Monell* claim. Plaintiffs disclosed Jeffrey Danik, a retired FBI agent, as one of their experts to opine on the FBI and CPD's joint investigation. Ex. 1 (Danik Report, April 1, 2024). Specifically, Danik discusses how the City's inaction for years was unreasonable in light of the allegations and evidence against Watts and his team.

To rebut Danik, Defendants disclosed Michael Brown, another retired FBI agent, in their expert disclosures. Ex. 2 (Brown Report & CV, May 13, 2024). Although Brown may be competent to discuss FBI investigations, his report and deposition show that he is attempting to

2

go beyond his expertise and opine on matters that are not proper subjects of expert testimony. In particular, Brown proposes to: (1) discuss witness credibility; (2) offer speculative testimony; and (3) offer opinions that exceed his expert qualifications. The Court should grant Plaintiffs' motion to bar Brown from doing any of these things.

## LEGAL STANDARD

"[A]ll witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004). Federal Rules of Evidence 702 and 703 govern the admissibility of expert witness testimony. Fed. R. Evid. 702 & 703. Opinion testimony is admissible only if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and then only if the testimony is "based on sufficient facts or data" and "the product of reliable principles and methods," which the expert has "reliably applied." Fed. R. Evid. 702. The expert's opinion must be based on "knowledge," not merely "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

The trial judge occupies a "gatekeeping role" and must scrutinize proffered expert testimony to ensure it satisfies each requirement of Rule 702. *Daubert*, 509 U.S. at 592-93, 597. Part of the Court's gatekeeping role is to ensure that opinions are based on reliable science. *See, e.g.*, *Harris v. City of Chicago*, 14 C 4391, 2017 WL 3142755, at *5 (N.D. Ill. July 25, 2017) (decision of whether an expert's opinion is based on reliable science is "a legal conclusion for the Court's resolution pursuant to *Daubert* and Rule 702"). By contrast, it is not proper for an expert to testify that another expert's opinion is not based on reliable science. *Id*.

The proponent of the expert evidence bears the burden of establishing, by a preponderance of the evidence, that the requirements set forth in Rule 702 and *Daubert* have

3

been satisfied. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). This rule applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). A *Daubert* inquiry ultimately requires a two-step analysis: first, a determination of the expert's reliability, and second, whether the proposed expert testimony is relevant and aids the trier-of-fact. *Cummins v. Lyle Industries*, 93 F.2d 362, 367-68 (7th Cir. 1996). A trial court should exclude expert testimony that is not pertinent to a disputed issue in the case even if the methodology underlying the testimony is sound. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

1. **Brown should be prohibited from testifying on the Plaintiffs' or any witnesses' credibility.**

First, Brown's deposition testimony about Plaintiffs' and witnesses' credibility must be barred.

It is well-settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of that testimony. *United States v. Hall,* 165 F.3d 1095, 1107 (7th Cir. 1999). Nor may expert witnesses attempt to sort out possible conflicting testimony or to argue the implication of those inconsistencies. *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011).

Brown violated these principles when he testified at his deposition that he believed Baker "has some credibility issues." Ex. 3 (Dep. of Michael Brown, May 29, 2024) at 136:1-3. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆ As outlined above, it is improper for an expert witness to comment on a witness or plaintiff's credibility. Thus, this Court should bar any attempts by Brown to do so.

4

2. **Brown should be barred from offering speculative opinions.**

An expert's opinion must be based on "knowledge," not merely "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Although an expert may offer "a hypothetical explanation of the possible or probable causes of an event," the Seventh Circuit has cautioned that "these hypothetical alternatives must themselves have 'analytically sound bases' so that they are more than mere 'speculation' by the expert. *Smith*, 215 F.3d at 718-19 (quoting *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998)). Here, Brown does just that with the following conclusions and testimony:

- In his report, in commenting why administrative sanctions should not occur during the eight-year criminal investigation, Brown stated, "There could also be collateral damage to any CPD administrative proceeding as well. CPD would no longer be able to use a successful prosecution of Watts as a deterrent to current or future officers. Rather, to those who were aware of Watts' illegal activity, it would appear that Watts 'got away' with his illegal activity and that CPD merely looked the other way rather than bring charges against one of their own. The public and the media could likely characterize the failure of Watts being criminally charged as an example of a police cover-up." Ex. 2 (Brown Report) at 14.
    - Here, Brown is merely speculating about the public reaction to a hypothetical situation that never happened. This is truly pure speculation about the public's reaction to a possible event that might have happened in an alternative universe. Beyond that, nothing in Brown's background or in his expert disclosure would suggest that he is an expert in public relations, media relations, or in the way that the public reacts to decisions to prosecute (or not prosecute) individuals.

5



Brown, however, does not provide any basis or support for the opinion that a lack of documentation is a basis to conclude that an individual was proactively excluded as a suspect. For that reason, it is speculative and should be barred.

- ███████████████████████████████████

  o To the extent that Brown intends to offer such testimony at trial, it should be barred because he failed to provide any basis for those opinions other than speculation.

Because each of these opinions are improperly speculative, this Court should prevent Brown from presenting any opinions on these topics.

### 3. **Brown should be barred from offering opinions outside the scope of his expertise.**

Brown strays from his own expertise in his proffered testimony when he comments on IAD and Union contract issues, and this Court should bar opinions when he does so.

Courts routinely strike expert opinions that go beyond that witness' areas of expertise. *See, e.g.*, *Fisher v. Ethicon, Inc.*, 624 F. Supp. 3d 972, 981 (C.D. Ill. 2022) (barring a pathologist from opining on specific risks of surgical tool and whether those risks appeared on instructions); *Casares v. Bernal*, 790 F. Supp. 2d 769 (N.D. Ill. 2011); *see also*, *Ilnytskyy v. Equipnet, Inc.*, 627 F. Supp. 3d 818, 828-29 (E.D. Mich. 2022) (prohibiting industrial safety expert from testifying about forklift operation); *Johnson v. Baltimore Police Dep't*, 608 F. Supp. 3d 227 (D. Md. 2022) (barring police practices expert from testifying about the reasonableness of suspect's psychological response during police pursuit); *Easterwood v. Husqvarna Pro. Prod., Inc.*, 576 F. Supp. 3d 950, 962 (M.D. Ala. 2021) (excluding mechanical engineer's opinions about product manufacturing warnings); *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013) (limiting treating physician's testimony on decedent's cause of death given scope of physician's treatment); *In re Aredia & Zometa Prod. Liab. Litig.*, 754 F. Supp. 2d 934, 938 (M.D. Tenn. 2010) (barring treating doctors from opining on causation of patient's diagnosis); *In re Viagra Prod. Liab. Litig.*, 658 F. Supp. 2d 950, 960 (D. Minn. 2009) (prohibiting epidemiologist from offering opinion on the causation of plaintiff's vision loss).

    A. *CPD's Internal Affairs and Independent Investigation*

Brown is not equipped to testify or comment about the policies, practices, and procedures of the CPD's Internal Affairs Department or CPD's internal investigation of Watts and his team. Police internal affairs fall outside of Brown's expertise. Indeed, Brown specifically testified that he was not offering opinions about CPD's internal affairs system. Ex. 3 (Dep. of Michael Brown)

7

at 74:9-17. Yet, Brown improperly ventured into the realm of police internal affairs operations, including that of CPD, several times throughout his report and during his deposition.[1]

- Brown's report states, "As to officers other than Watts and Mohammed, there was insufficient evidence to bring criminal *or administrative* charges." Ex. 2 (Brown Report) at 16 (italics added). *See also* Ex. 2 at 28 (Brown stating similarly about the insufficient evidence to bring administrative charges).
    - Without the requisite background on internal affairs, Brown has no basis to provide an opinion that there was insufficient evidence to bring administrative charges.
- In his report, Brown asserts that "CPD must include an analysis as to the sufficiency of any evidence when it decides to initiate an administrative action against its officers." Ex. 3 (Brown Report) at 19.
    - Without the requisite background on internal affairs, especially CPD specifically, Brown has no basis to opine on what CPD had to do to initiate an administrative action against Watts or Mohammed.
- In his report, Brown asserts, "These same risks are also present when conducting an administrative action against the targeted officers. Although the evidentiary burden is lower in such an action, certain portions of evidence will still have to be revealed. This revelation could cause irrevocable damage to the ongoing investigation or cause it to be shut down. Danik's opinion that 'nothing precludes the use of that evidence …in an administrative action,' is far from reality. As outlined above, numerous reasons exist for not using this evidence in a premature administrative action against either Watts or

---

[1] During his deposition, Brown testified that he does not know what the standards are that govern CPD Internal Affairs investigations. Ex. 3 (Dep. of Michael Brown) at 257-263.

8

Mohammed. Finally, since the evidence of the controlled bribe payments was not available for CPD IAD to use until the conclusion of the criminal investigation, it is likely that any such administrative proceeding would be unsuccessful, leaving those officers on the street and obstructing the criminal investigation at the same time. Ex. 2 (Brown Report) at 31.

- o Without any background or knowledge of internal affairs, Brown has no basis to offer an opinion on the probability of success of an administrative proceeding brought against Watts or Mohammed.

- When asked at this deposition what the basis for his opinion is that CPD's investigatory actions in 2006, when the FBI investigation was suspended, met generally accepted standards, Brown testified, "From the review of the record, it shows that CPD was in communication with the Cook County State's Attorney's Office. It should be noted that that was one of the reasons if not the main reason that the U.S. Attorney's Office declined prosecution and therefore the FBI shut down the investigation, because of the parallel investigation that was being conducted by local authorities. The record showed that CPD was in communication with that office, and I also noted that the CPD IAD had reopened some of the CR complaints that formed the foundation. And also at the end of 2006, one of the CPD investigators was able to cultivate another -- another informant that was able to -- I'll just use the term go direct drag with the accused, and that information was then brought to the FBI and was the basis for the FBI reopening the investigation. So based upon those things that I just enumerated, it's certainly demonstrated that CPD did not just sit on their hands, but they were actively involved in the investigation." Ex. 3 (Dep. of Michael Brown) at 36:11-37:6.

9

- o Brown offers no basis for opining on what CPD did when the FBI's joint investigation was suspended in 2006. Brown was only disclosed to opine on the joint investigation, not any investigative steps CPD took independent of the FBI.

Therefore, this Court should exclude Brown's opinions and testimony concerning law enforcement internal affairs.

B. *Union/FOP Contract Issues*

Again, Brown's proffered conclusions exceed his expertise. In his report, Brown explained his opinion that CPD acted reasonably during the joint investigation, "Amongst the potential areas of concern for CPD could be possible due process claims and potential violations of labor contracts should CPD use information that was not reliable or validated. Just as in a criminal investigation, the administrative process requires an investment of time and resources, an investment that would most likely not take place in the expedited manner that is suggested by plaintiff's expert." Ex. 2 (Brown Report) at 28. Brown, however, has no experience with police union contracts, nor did he review the operative FOP contract between CPD and its officers. Ex. 3 (Dep. of Michael Brown) at 83:13-23, 171:2-172:20. Accordingly, he is not equipped to comment on whether a quicker investigation would violate labor contracts.

This opinion is improper for an additional reason. It is based on Brown's speculation rather than evidence in the record. As discussed in the previous section, experts may not offer opinions that rest on mere speculation, without more. Here, Brown found nothing in the record that suggested that union or due process concerns influenced CPD's approach to the joint investigation or its own internal investigations. Ex. 3 (Dep. of Michael Brown) at 171:2-172:20. Despite that, Brown opined that CPD could have been concerned about violating a labor union contract and officers' due process rights.

10

Thus, Brown's opinion on these matters should be excluded.

## CONCLUSION

For the reasons stated herein, this Court should bar Michael Brown's opinions and testimony on the above-described topics.

Respectfully Submitted,

*/s/ Gianna Gizzi*
*One of Plaintiffs' Attorneys*

Jon Loevy
Arthur Loevy
Scott Rauscher
Josh Tepfer
Theresa Kleinhaus
Sean Starr
Gianna Gizzi
LOEVY & LOEVY
311 North Aberdeen Street,
Chicago, IL 60607
(312) 243-5900
gizzi@loevy.com